STATE of Missouri, Plaintiff–
Respondent,

v.

Ricky PEPPER, Defendant–Appellant.

Ricky PEPPER, Movant,

v.

STATE of Missouri, Respondent.

Nos. 59811, 62295.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 22, 1993.

S. Paige Canfield, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joan F. Gummels, Asst. Atty. Gen., Jefferson City, for respondent.

PUDLOWSKI, Judge.

Defendant, Ricky Pepper, was convicted of burglary in the second degree, § 569.-170, RSMo 1986, in the Circuit Court of the City of St. Louis and received a sentence of fourteen years. This consolidated appeal raises five points of error: (1) that insufficient evidence was adduced to convict defendant of the crime charged; (2) that the admission of evidence of four prior burglary convictions for the limited purpose of demonstrating defendant's intent was manifestly unjust; (3) that striking a juror on the basis of employment as a postal worker was merely a pretext for discrimination and not a legitimate race-neutral reason; (4) that defendant's trial counsel was ineffective for failing to call a witness to testify that she did not identify appellant; and (5) that the instruction defining "reasonable doubt" could have resulted in the jury convicting defendant on less than the requisite degree of proof.

The evidence supporting defendant's conviction consisted of the following: On the morning of May 1, 1990, Stanley Curry left his home located at 1753 McLaran in the City of St. Louis. Mr. Curry locked the doors to his home, including the door to his basement located at the rear of his home.

At approximately noon on the same day, Police Officers Reginald Davis and Ed Martin responded to a call regarding suspected prowlers at 1753 McLaran. The officers drove to the scene where they were informed that a man wearing a black jacket had fled from the rear of the residence. As the officers drove around the neighborhood, they observed defendant attempting to enter another residence. The officers knocked on the door of the residence and were informed that no one had recently entered it. From the porch of the home, the officers observed defendant who fled upon being spotted.

Officer Davis chased defendant on foot between houses, while Officer Martin fol-

lowed in a patrol car. Defendant was apprehended by Officer Davis as he emerged from the back of another home. An officer advised defendant of his *Miranda* rights, and he indicated that he understood. After being informed of his rights, defendant stated that he had gone with a friend to Mr. Curry's residence. Defendant related that he had stayed in the front of the home while his friend had gone to the rear of the house. Defendant told police that while he waited in front of the home, he heard a loud noise and went around to the back to see what was amiss. At that point, defendant noticed that his companion had kicked in the rear basement door of the home. Defendant stated that his companion instructed defendant to return to the front of the home to watch for police. After defendant's arrest, he was driven around in an attempt to locate his companion. These efforts proved futile. Officer Martin testified that defendant had confessed after he was placed under arrest and stated "Man I did it. I want to make a deal."

Defendant was arrested and taken to the police station. While being processed it was discovered that defendant had a prisoner release bracelet attached to his ankle. Defendant offered to provide information on the location of various drug houses in the neighborhood in exchange for a "deal." Defendant again confessed to the burglary. In addition, the police took a written statement.[1]

Defendant was found guilty by a jury of second degree burglary and sentenced as a class X offender to fourteen years imprisonment. Defendant brings this appeal from his conviction and sentence and denial of his Rule 29.15 motion.

■ In his first point of error, defendant complains that insufficient evidence was adduced to convict him of burglary in the second degree. In assessing a sufficiency of the evidence challenge, the evidence, to-

---

1. The statement as recorded in the trial transcript provides:

I was with a friend and named Rob who said he was go over his cousin's house and would let me used the phone. He went around back. I was on front. When I heard a noise I walked to the back, and he had run in the house. When he saw me he asked me to look out for police. I turned and started. for the front and saw police pulling up so I turned and ran and so did he.

/s/ R. Pepper

gether with all favorable inferences to be drawn therefrom, is viewed in the light most favorable to the verdict and contrary evidence and inferences are disregarded. *State v. Mallett*, 732 S.W.2d 527, 530 (Mo. banc), *cert. denied*, 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987). An appellate court does not weigh evidence but limits review to a determination of whether the verdict is supported by "sufficient evidence," defined as that quantum of evidence from which reasonable men could find a criminal defendant guilty of the crime charged. *State v. Murphy*, 753 S.W.2d 90, 91 (Mo.App.1988).

In the instant case, the state's burden was to show beyond a reasonable doubt that defendant, acting alone or in concert, "knowingly enter[ed] unlawfully ... a building or inhabitable structure for the purpose of committing a crime therein." § 569.170, RSMo 1986. The state clearly adduced sufficient evidence. In addition to the circumstantial evidence of defendant's behavior in eluding police, the state produced evidence of defendant's repeated confessions—both oral and written—admitting that he had in fact committed the crime. Point denied.

▮▮▮ In his second point, defendant contends that the trial court erred in admitting evidence of his four prior burglary convictions for the purpose of demonstrating his intent or absence of mistake because the admission of such crimes was highly prejudicial.[2] We review appellant's second point under a plain error standard because he failed to raise the matter in a timely motion for new trial. Rule 29.12(b); *State v. Williams*, 784 S.W.2d 276, 280 (Mo.App.1989). Relief will be granted under the plain error rule only when the error so substantially affects the right of the accused that manifest injustice or miscarriage of justice inexorably results if left uncorrected. *State v. West*, 849 S.W.2d 671, 674 (Mo.App.1993). The burden of demonstrating that the trial court took ac-

tion resulting in manifest injustice is allocated to the defendant. *Id.* A trial court is vested with broad discretion when determining the relevance of evidence. *Id.* Evidence of the defendant's prior convictions is admissible if it is logically relevant, meaning that it tends to prove or disprove a fact in issue or corroborates relevant evidence bearing upon a principal issue, and if such evidence is admitted for a permissible purpose, apart from merely demonstrating a propensity on the part of the defendant to commit a crime. *State v. Trimble*, 638 S.W.2d 726, 732 (Mo. banc 1982). Evidence of other crimes is admissible where it has a legitimate tendency to establish a defendant's motive, intent, absence of mistake or accident, common scheme or plan, or identity. *Id.*

In the instant case, defendant told police that his friend had broken down the basement door at 1753 McLaran, without defendant's knowledge of his accomplice's criminal purpose, implying that defendant was an innocent bystander. The trial court allowed evidence of defendant's prior burglaries for the limited purpose of demonstrating defendant's intent and absence of mistake. In light of defendant's repeated confessions to the crime along with other evidence adduced, we cannot say that defendant has demonstrated that he suffered manifest injustice as a result of the admission of evidence of his prior convictions. Point denied.

▮▮ In his third point on appeal, defendant contends that the trial court clearly erred in that the state was allowed to use its peremptory strikes in a discriminatory manner. Specifically, defendant contends that the state's removal of a juror on the basis of employment as a postal worker was merely a pretext for discrimination. When asked to provide a race-neutral reason for striking the African–American postal worker from the panel, the prosecutor stated:

---

**2.** The limiting instruction submitted with the jury instructions provides: "If you find and believe from the evidence that the defendant was convicted of or pled guilty to offenses other than the one for which he is now on trial, you may consider that evidence on the issue of intent and absence of mistake of the defendant."

I struck him because it says he works for the United States Post Office.

One of the things that I got when I first started in this office was a list of people that are typically bad for the State versus people that are good for the State. One of the people they had listed there was post office employees. I am not quite sure why. But they are listed. And it seems to me that every time I have left post office employees on there, they have hurt me on the jury panel. So now I make a habit of striking post office employees in light of what I learned to begin with.

The question presented is whether the reasons given by the prosecutor run afoul of the requirement that jurors not be struck from jury panels based upon their race. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Two cases from this district have considered the question of whether striking a person on the basis of employment with the post office is a legitimate reason. *See State v. Hudson*, 822 S.W.2d 477, 480–81 (Mo.App.1991); *State v. Payton*, 747 S.W.2d 290, 293 (Mo. App.1988). In *Hudson*, the reason given for striking the prospective juror/postal worker was based upon the prosecutor's perceptions of the liberal political leanings of postal workers generally. The prosecutor based his opinion on personal and professional experience with postal workers. 822 S.W.2d at 480. In *Payton*, the prosecutor stated that he removed postal workers whether they were white or black. 747 S.W.2d at 293. In both cases, the explanations were deemed satisfactory race-neutral explanations by the reviewing courts.

In the instant case, the prosecutor's proffered reason for excluding the prospective juror from the panel drew upon advice given to him by the prosecutor's office and upon personal professional experience. These reasons are sufficient race-neutral explanations for the strikes. Point denied.

■ In his fourth point, defendant asserts that the trial court erred in denying his Rule 29.15 motion for ineffective assistance of counsel because of the failure of his trial counsel to call Tyreen Mackie as a defense witness. Ms. Mackie would have presumably testified that she could not identify defendant as the burglar. Our review of the motion court's denial of a post-conviction motion is limited to determining whether the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 29.15(j); *State v. Vinson*, 800 S.W.2d 444, 448 (Mo. banc 1990). Findings are clearly erroneous only if, after review, the reviewing court is left with the definite impression that a mistake has been made. *Id.*

In order to prevail on a claim of ineffective assistance of counsel, a movant must prove (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he was thereby prejudiced. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). Both the performance prong and the prejudice prong must be satisfied. *Id.* To satisfy the prejudice prong of the two part test, a defendant must show that but for the alleged mistake, the outcome of the trial would have been different. *State v. Stepter*, 794 S.W.2d 649, 656 (Mo. banc 1990). Furthermore, counsel is presumed to be competent, and the defendant must overcome the presumption that counsel's actions were sound trial strategy. *Id.*

■ As a general rule, the failure to call defense witnesses is a matter of trial strategy and will not support a finding of ineffective assistance of counsel. *State v. Fraction*, 782 S.W.2d 764, 770 (Mo.App. 1989). "Counsel's decision to not use a witness is a virtually unchallengeable matter of trial strategy." *State v. Hamilton*, 791 S.W.2d 789, 798 (Mo.App.1990).

Testimony by defendant's trial counsel revealed that Ms. Mackie could not identify defendant as the burglar, but also that she could not identify anyone else as the burglar "because she did not get a good enough look at the guy." Defendant's trial counsel stated that Ms. Mackie was very upset at having defendant brought before her for identification and feared that she would identify him in open court as the burglar. Under the circumstances, it was

well within the trial counsel's discretion not to call Ms. Mackie.   Point denied.

In his fifth and final point, defendant claims that MAI–Cr3d 302.04, contained in the jury instructions given at trial and defining reasonable doubt in terms of being "firmly convinced" of defendant's guilt, unconstitutionally lowers the state's burden of proof.   The instruction's validity has been repeatedly examined and upheld. *E.g. State v. Twenter,* 818 S.W.2d 628, 634 (Mo. banc 1991);   *State v. Murry,* 744 S.W.2d 762, 771 (Mo. banc), *cert. denied,* 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988).   Point denied.

The judgments of both the trial court and the motion court are affirmed.

CRANDALL, P.J., and GRIMM, J., concur.