**STATE of Missouri, Respondent,**

v.

**Anthony J. CRISWELL, Appellant.**

**Anthony J. CRISWELL, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. WD 48186, WD 50182.**

Missouri Court of Appeals,
Western District.

Oct. 3, 1995.

Stephen J. Harris, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before LAURA DENVIR STITH, P.J., and LOWENSTEIN and HANNA, JJ.

LOWENSTEIN, Judge.

Anthony Criswell appeals a conviction of burglary in the second degree under § 569.170, RSMo (1986). Criswell was sentenced as a prior, persistent, and class X offender under §§ 558.016, 558.019, and 557.036.4 RSMo (Supp.1990), for participation in three felonies committed at different times. Criswell also appeals the denial of his Rule 29.15 post-conviction motion. The appeals are consolidated.

The facts of the case are as follows:

At 2:04 a.m. April 17, 1992, police were dispatched to a Brandsmart Electronics store at East 40 Highway and Noland Road. Brandsmart's alarm company notified the police when motion sensors inside the store were triggered. The first Independence police officer at the store saw movement on the ground near the building. He called for assistance and then approached the building. The building's power box and electrical meter had been destroyed. Electrical and telephone wires leading to the building had been cut. The wire to the triggered alarm escaped being severed by one-eighth of an inch.

A hole, apparently made with a sledgehammer, had been knocked in a side wall of the second story; someone had entered the building through the hole. Two sets of shoeprints were visible *on top of* the debris scattered around the hole, obviously having been made after the entry hole was created. More shoeprints made by a pair of Nike tennis shoes were found inside the building on shelving and on a junction box near the hole. An inside door to a storage room had been forced open in a manner consistent with the use of a screwdriver.

Shortly after responding to the radio call, a police detective found a 1991 Chevrolet pickup in a church parking lot about 300 yards from the Brandsmart. Its steering column was broken, indicating the truck had been stolen. The owner testified that the truck had been stolen shortly before the burglary. A police detective who set up surveillance of the truck watched two males emerge from brush near the pickup. One was carrying a sledgehammer and wore a blue jacket and dark pants, and one was wearing a gray jacket and dark pants. The blue jacket was later seized from Criswell and identified by the detective as belonging to one of the people he had seen.

The suspects got inside the truck and began to drive off. As police attempted to block the exits from the parking lot, the truck took evasive action and led them on a chase. The chase ended on 45th and Spring, where the occupants crashed and fled on foot. Inside the truck was a screwdriver, a pair of pliers, a pair of wire cutters, and a sledgehammer, none of which belonged to the truck's owner.

Officers caught one of the suspects, James Latimer. Latimer was wearing gloves, jeans, and a gray jacket which belonged to the owner of the truck. A pair of pliers was found in Latimer's pocket. His Adidas tennis shoes were seized and later matched to one of the sets of footprints on top of Brandsmart.

Although the other suspect was pursued by officers, a canine unit, and a helicopter, he was not apprehended. For thirty minutes, the police searched the vicinity, except for a wooded area and railroad tracks east of the crash site which led toward Noland South Shopping Center and Celebrities Bar.

Earlier that evening, Greg Fetters had left his 1985 Oldsmobile at Celebrities Bar. When he returned to pick up his car at 9:00 a.m. the morning after the burglary, it was missing. At 8:42 that morning, a police officer observed a man later identified as Criswell standing next to Fetter's Oldsmobile at 40 Highway and Sterling. The trunk of the vehicle was open. Criswell, standing next to the car wearing a blue jacket, turned his head away in order to hide his face from the officer.

The officer left the area to respond to another call. When he returned, Criswell was gone. However, a short time later, Criswell sped past the officer at 40 Highway and Sterling. When the officer pursued Criswell, the Oldsmobile left the road and struck a mailbox, at which time Criswell fled on foot. He was observed by a pursuing officer to be wearing gloves.

Officers captured Criswell and seized his Nike shoes, which matched the other set of shoeprints on top of Brandsmart and were not inconsistent with the shoeprints inside the store. A flashlight was found in the Oldsmobile. Criswell pled guilty to the theft of the Oldsmobile prior to his burglary trial.

## I.

Criswell complains that the trial court erred when it admitted evidence of the theft of the 1985 Oldsmobile Calais. Criswell asserts that the details of the theft were inadmissible evidence of a crime other than the charged crime.

At trial, and over objection, the state told the jury that the automobile had been stolen from Celebrities bar on the evening of the robbery and that Criswell used the car in an attempt to evade police the next morning. The state's theory was that after eluding the police search that resulted in James Latimer's capture, Criswell hid in the woods and then "stole the first car he could find" in order to escape.

■ To be admissible, evidence must be logically and legally relevant. Evidence is logically relevant if it tends to prove or disprove a fact in issue or corroborates relevant evidence bearing upon the principal issue. *State v. Pepper*, 855 S.W.2d 500, 502 (Mo. App.1993). Other crimes evidence has a legitimate tendency to prove the crime charged if it establishes motive, intent, absence of mistake or accident, common scheme or plan, or identity. *State v. Chiles*, 847 S.W.2d 807, 809 (Mo.App.1992).

■ The common scheme or plan exception allows evidence of other crimes when that evidence "tend[s] to establish . . . a common scheme or plan embracing the commission of separate similar offenses so interrelated to each other that proof of one tends to establish the other . . ." *State v. King*, 588 S.W.2d 147, 150 (Mo.App.1979).

■ An exception closely linked to the common scheme or plan exception[1] allows

other crimes evidence when it is so "linked in point of time and circumstance with the crime charged that one cannot fully be shown without proving the other." *State v. Weatherspoon*, 728 S.W.2d 267, 272–73 (Mo.App. 1987).

■ The evidence of Criswell's attempted escape in the stolen Oldsmobile helps paint the picture of the burglary and the flight from the burglary. The evidence shows that the police did not search a wooded area along the railroad tracks leading toward Celebrities bar where the Oldsmobile was parked prior to its theft. Criswell was seen standing next to the car acting suspicious and wearing the blue jacket later identified by the detective as the one on the man with Latimer in the church parking lot. Criswell's capture after fleeing the Oldsmobile places him near the scene and shows an attempt to escape from the area. The car contained a flashlight that presumably could have been used in the burglary. It is a reasonable inference that the car was stolen as part of the continuous transaction of the burglary, namely the escape from the burglary. Proving the burglary and attempted escape necessarily involved proving the circumstances of the escape vehicle's theft.

Criswell argues that the time span between the attempted burglary and his arrest prevent the car theft from being "inseparably connected in point of time and circumstance" with the attempted burglary. Upon these unique facts, Criswell's argument fails. Criswell was hiding from a canine and helicopter search; it is reasonable to assume that he may have hid for several hours before seeking to make his escape in the car. It would be strange to reward Criswell for successfully evading the police until the day after the burglary. The evidence of flight from the burglary was logically relevant. *See State v. Mallory*, 747 S.W.2d 209 (Mo.App.1988), in which evidence of an attempt to steal a car was admissible in a rape trial to show flight from the scene of the rape.

---

1. *King* notes that the lines sometimes blur between the common plan or scheme exception and its parallel exception for other crimes so "linked in point of time and circumstances" with

the charged crime that one cannot fully be shown without proving the other. 588 S.W.2d at 150, n. 1. *See also State v. Weatherspoon*, 728 S.W.2d 267, 273, n. 4 (Mo.App.1987).

The evidence of the theft as presented was legally relevant because its probative value outweighed its prejudicial effect. It would have been different if the state had argued that the evidence showed Criswell's propensity to commit crimes, or if the theft had not been directly related to an escape. However, upon the facts of this case, the evidence was probative of the circumstances surrounding the burglary. Point one is denied.

## II.

■ Criswell's second point is that the evidence was insufficient to prove that he entered the store or was in the area at the time of the burglary. Upon review of the evidence and reasonable inferences most favorable to the verdict, Criswell's argument fails on this point. The shoeprints on top of the Brandsmart exactly matched Criswell's shoes. The shoeprints were on debris scattered when the entry hole was made with a sledgehammer. Criswell, identified by his jacket, was seen by police near the Brandsmart carrying a sledgehammer. Furthermore, the Nike shoeprints inside Brandsmart on top of shelving near the entry hole were not inconsistent with Criswell's shoes. The record supports other inculpatory inferences which need not be detailed here. Point two is denied.

## III.

Criswell's third point is that the trial court erred by submitting a jury instruction patterned after MAI–CR3d 302.04, which defines "proof beyond a reasonable doubt" as "proof which leaves you firmly convinced of the defendant's guilt." Criswell's well-worn argument that the language therefore allowed the jury to convict him on a lesser standard than beyond a reasonable doubt has been repeatedly rejected by the Missouri Supreme Court. *See State v. Harris,* 870 S.W.2d 798, 811 (Mo. banc 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). Point three is denied.

## IV.

Criswell's fourth point is that he was denied effective assistance of counsel when trial counsel refused to allow movant to testify in his own behalf. Rule 29.15. The record absolutely contradicts this claim, and point four therefore fails.

The judgment of conviction is affirmed. The order denying the Rule 29.15 motion is affirmed.

All concur.